**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **KENNETH CARL CRISSUP,** | § | |
| **Petitioner,** | § | |
| | § | |
| **vs.** | § | **C.A. NO.  C-05-431** |
| | § | |
| **NATHANIEL QUARTERMAN, Director,** | § | |
| **Texas Department of Criminal Justice–** | § | |
| **Correctional Institutions Division,** | § | |
| **Respondent.** | § | |

## MEMORANDUM AND RECOMMENDATION TO GRANT SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT

Petitioner is an inmate in the Texas Department of Criminal Justice - Criminal Institutions Division ("TDCJ-CID") and currently is incarcerated at the Estelle Unit in Beaumont, Texas.  The actions about which he complains occurred in Nueces County, Texas (D.E. 1).  Proceeding *pro se* and *in forma pauperis*, petitioner filed this petition pursuant to 28 U.S.C. §§ 2241 and 2254.[1]  The underlying convictions which are the subject of the petition are 2004 Nueces County convictions for the felony offenses of sexual assault of a child, indecency with a child and solicitation of capital murder.  Petitioner claims that his constitutional rights were violated during the trial and plea process.

On January 9, 2006 respondent filed a motion for summary judgment to which petitioner responded on February 24 and March 13, 2006 (D.E. 33, 37, 39).  A Memorandum and Recommendation ("M&R") was filed on June 15, 2006 in which it was recommended that (1) petitioner's claim that his sentence was illegal be dismissed as unexhausted and without merit;

---

[1]Petitioner originally filed two actions, 2:05-CV-431 and 2:05-CV-433, which were ordered consolidated on November 22, 2005 under 2:05-CV- 431 (D.E. 24).

(2) his claim that he was promised parole after 10 years be dismissed as unexhausted, or in the alternative, that the merits of the claim be addressed after transcripts were produced; and (3) his claim that his plea agreement was altered after he signed it be dismissed as unexhausted.  In addition, it was recommended that respondent's motion for summary judgment as to all of petitioner's remaining claims be denied without prejudice, pending production of the trial and guilty plea transcripts (D.E. 42).

Petitioner and respondent both filed objections to the M&R and petitioner filed a response to respondent's objections (D.E. 44, 48, 50).  On September 8, 2006 respondent filed copies of the trial transcript and the guilty plea proceedings in petitioner's state court case (D.E. 55).  Respondent filed a supplemental motion for summary judgment on October 12, 2006 to which petitioner responded on November 6, 2006 (D.E. 59, 65).  On November 28, 2006 petitioner filed a handwritten copy of a motion to amend and memorandum he claims that he filed in his state court habeas case (D.E. 70).

## BACKGROUND

Petitioner was indicted on three counts of sexual assault of a child and two counts of indecency with a child by a Nueces County Grand Jury in Cause No. 03-CR-2175 G (S3).  Ex Parte Crissup, App. No. 61,474-01 at 78-81.[2]  In addition he was charged by information with criminal solicitation of capital murder in Cause No. 04-CR-2930 G.  Ex Parte Crissup, App. No. 61,474-02 at 39.

---

[2]The state court records are located at D.E. 34.  The trial and plea transcripts are located at D.E. 55.

2

A jury trial commenced on August 17, 2004 and the prosecution presented a number of witnesses.  The trial continued until August 20, 2004 when petitioner entered a plea of no contest to three counts of sexual assault of a child, two counts of indecency with a child and one count of solicitation of capital murder.  Ex Parte Crissup, App. No. 61,474-01 at 62-67 and 163-164; App. No. 61,474-02 at 42-43.  The terms of the written plea agreement provided that petitioner would serve 20 years for each count of sexual assault and indecency with a child with the sentence imposed on the sexual assault charges beginning when the sentence on the indecency charges has ceased to operate.  Ex Parte Crissup, App. No. 61,474-01 at 62-65.  On the solicitation of capital murder charge petitioner was ordered to serve a 40-year term of incarceration, with the sentence to run concurrently to the sentences imposed in the sexual assault and indecency charges.  Ex Parte Crissup, App. No. 61,474-02 at 39-41; App. No. 61,474-01 at 62-65.

As part of the plea agreement petitioner agreed that if the punishment assessed did not exceed the punishment recommended by the prosecutor and agreed to by the defendant and his attorney, petitioner could not appeal the conviction without permission of the court for nonjurisdictional defects or errors that occurred before entry of the plea and that he could appeal his conviction only on matters raised by written motion and ruled on before trial.  Ex Parte Crissup, App. No. 61,474-01 at 66-67; App. No. 61,474-02 at 42-43.  On the same day the plea was entered, the trial court signed a certification that there were no matters raised by written motion filed and ruled upon before trial and that petitioner had NO right of appeal (emphasis in original).  Petitioner signed an acknowledgment that he received a copy of the certification.  Ex Parte Crissup, App. No. 61,474-01 at 76.

Nevertheless, on August 31, 2004 petitioner filed a notice of appeal with the trial court and a motion for a new trial on October 19, 2004.  The trial court construed petitioner's notice of appeal as a request for permission to appeal and denied the request on September 2, 2004.  The trial court also submitted a copy of the certification denying petitioner's right of appeal to the Thirteenth Court of Appeals (D.E. 34).

On September 9, 2004 the Thirteenth Court of Appeals ordered petitioner's trial counsel to review the record, determine whether the petitioner had a right to appeal and to inform the court of his findings on whether petitioner had a right of appeal or whether there was an amended certification regarding his right of appeal.  Crissup v. State, No. 13-04-463-CR (D.E. 34).  On October 7, 2004 petitioner's trial counsel submitted a letter stating that petitioner had pleaded nolo contendere during the middle of the jury trial and the plea was made pursuant to a plea bargain agreement where the state recommended a 40-year sentence to the trial court (the two consecutive 20-year sentences and the concurrent 40-year sentence).  The letter added that the trial court accepted the plea bargain agreement and petitioner was convicted and sentenced to a total of 40 years confinement in prison.  Shortly thereafter petitioner changed his mind and wanted to withdraw his pleas of *nolo contendere*.  The trial court denied petitioner's requests for permission to appeal (October 6, 2004 letter of Mark W. Stolley to Court of Appeals, D.E. 34).

Petitioner's counsel further informed the Court of Appeals that based on a review of the record, petitioner did not have a right to appeal because the punishment assessed did not exceed the punishment recommended by the prosecutor and the trial court had not given petitioner permission to appeal.  In addition, petitioner had not perfected his right to appeal as required by

the rules of appellate procedure (Id.).  The Thirteenth Court of Appeals dismissed the petitioner's appeal on October 28, 2004.  Crissup v. State, No. 13-04-463-CR at 2.

On February 9, 2005 petitioner filed his first state writ application.  Ex Parte Crissup, App. No. 61,474-01 at 2.  The State filed an answer on February 14, 2005 and the trial court recommended that the application be denied.  Id. at 50-60; 77-78.  The Texas Court of Criminal Appeals denied the application without written order on May 25, 2005.  Id. at cover.

Petitioner filed a second state writ application in May 2005 and the State filed an answer on June 14, 2005.  Ex Parte Crissup, App. No. 61,474-02 at 2-32; 43-38.  The trial court recommended that the application be dismissed on June 15, 2005 and the Texas Court of Criminal Appeals dismissed it without written order on July 27, 2005.  Id. at 49-50, cover.

Petitioner filed his current applications in federal court on July 21, 2005 and August 10, 2005 and they were consolidated on November 22, 2005 (D.E. 24).  Petitioner makes the following allegations:

(1) An illegal search was conducted at his residence;

(2) He was denied his right to appeal;

(3) He was denied a psychological evaluation and defense;

(4) He was denied a preliminary hearing;

(5) He was denied the right to testify before the grand jury;

(6) He was denied trial transcripts;

(7) He was not allowed to talk to his court-appointed appellate attorney;

(8) His court-appointed appellate attorney failed to perfect his appeal;

(9) There was insufficient evidence to sustain the indictment;

(10) The court wrongfully denied a continuance of the trial;

(11) The court refused to subpoena defense witnesses requested by petitioner;

(12) Defense counsel misrepresented documents to the jury and misrepresented to the trial court petitioner's mental problems;

(13) The prosecution made prejudicial statements about petitioner and his counsel;

(14) Petitioner was not allowed to proceed with hybrid counsel;

(15) The trial court allowed testimony about an unadjudicated extraneous offense to be offered during petitioner's sexual assault case;

(16) Petitioner received ineffective assistance of counsel;

(17) The trial court allowed the introduction of inadmissible evidence;

(18) The prosecutor engaged in misconduct and vindictiveness;

(19) The prosecutor withheld exculpatory evidence until 4½ days after the trial started;

(20) Petitioner entered his nolo contendere plea unwillingly and as a result of coercion;

(21) The trial court wrongly denied petitioner's motion to sever the cases of the alleged victims;

(22) Petitioner is actually innocent of the conspiracy to solicit capital murder charge;

(23) The plea agreement was breached and

(24) The sentence is illegal.

In the original motion for summary judgment, respondent argues that some of petitioner's claims are barred because he did not exhaust them and that his exhausted claims should be denied on the merits.  In the supplemental motion for summary judgment respondent adopted and included his original motion for summary judgment and also argued the state court

determination that petitioner entered his guilty pleas knowingly and voluntarily and that he received effective assistance of counsel should be upheld.  Petitioner counters that he exhausted all of his claims and that he is otherwise entitled to relief.

## APPLICABLE LAW

### A.  Exhaustion of State Remedies and Procedural Bar

In the original motion for summary judgment, respondent argues that petitioner has not exhausted his claims that (1) there was a breach of the plea agreement; (2) the plea was coerced because counsel misrepresented the amount of time he would have to serve before he is eligible for parole; (3) he is actually innocent of the charges and (4) his sentence is illegal.  Respondent concedes that petitioner's remaining claims are exhausted.

All claims brought in a federal petition must have been exhausted at the state court level. See 28 U.S.C. § 2254(b)(1); Picard v. Connor, 404 U.S. 270, 278, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971); Myers v. Collins, 919 F.2d 1074, 1076 (5th Cir. 1990).  In addition, where a petitioner fails to exhaust state remedies and the state court to which he would be required to present his claims would find the claims procedurally barred, there is a procedural defect for purposes of habeas corpus regardless of the decision of the last state court to which the petitioner actually presented his claim.  Coleman v. Thompson, 501 U.S. 722, 735, 111 S.Ct. 2546, 2564, n. 1, 115 L.Ed.2d 640 (1991)(citing Harris v. Reed, 489 U.S. 255, 269-270, 109 S.Ct. 1038, 1046-47, 103 L.Ed.2d 308 (1989)).

In the M&R filed on June 15, 2006 it was recommended that a finding be made that petitioner exhausted his claims that he was actually innocent of the charges and that the plea

agreement was breached (D.E. 42, pp. 7-8, 9).  That continues to be the recommendation of the undersigned.

In regard to his claim of illegal sentence, it was recommended that the claim be dismissed as unexhausted because petitioner did not explain what he meant when he said the sentence was "illegal."  Petitioner had argued that he exhausted all of his claims in an amended petition he filed in the state court, but no record of the amended petition was found in the record.  With the permission of the undersigned, petitioner filed a hand-written copy of the amended petition that he claims he filed (D.E. 70).

In the amended state court petition, he stated, "The petitioner has claimed an illegal sentence and involuntary plea" and added that the written punishment exceeded the sentence maximum.  Accordingly, it is recommended that petitioner's cause of action regarding his illegal sentence not be dismissed for failure to exhaust.

Nevertheless, it still is recommended that petitioner's claim of illegal sentence be dismissed on the merits.  As discussed in the previous M&R, the offense of solicitation of capital murder is a first degree felony punishable by imprisonment for life or a term of five to 99 years and the sexual assault offenses were punishable by terms of imprisonment of two to twenty years.  TEX. PENAL CODE §§ 15.03, 12.32, 22.011, 21.11, 12.33.  The sentences petitioner received were within the applicable ranges and he has not shown that they were otherwise "illegal."  Accordingly, it is recommended that this claim be summarily dismissed because it is conclusory and unsupported by specifics.  28 U.S.C. § 2254(b)(2).

Regarding petitioner's claim that his attorney misrepresented the amount of time he would have to serve before he was eligible for parole, it was noted in the previous M&R that

exhaustion was a closer question because although petitioner had mentioned the claim, he had not really presented the substance of his claim to the state court.  Wilder v. Dretke, 274 F.3d 255, 259 (5th Cir. 2001)(citing Nobles v. Johnson, 127 F.3d 409, 420 (5th Cir. 1997) and Picard, 404 U.S. at 275-76, 92 S.Ct. at 512.  While it was recommended that the claim be dismissed for failure to exhaust, it was also noted that the merits of the claim would be addressed after the trial and plea transcripts were filed.  Accordingly, the merits will be addressed below.

## B.  Merits

### (1) Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a state prisoner may not obtain relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d) (West 1996).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court on a question of law or if the state court decides a case differently than the Court on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.  Williams v. Taylor, 529 U.S. 362, 412-413, 120 S.Ct. 1495, 1523, 146 L.Ed.2d (2000).  Although

"unreasonable" is difficult to define, the Supreme Court noted that it is an objective, rather than subjective, standard and emphasized that there is a critical difference between an unreasonable application of federal law and a merely "incorrect" or "erroneous" application of federal law. Neal v. Puckett, 239 F.3d 683, 687 (5th Cir. 2001)(citing Williams, 120 S.Ct. at 1522-1523). A federal court has no authority to grant habeas corpus relief simply because it concludes in its independent judgment that a state court's judgment is erroneous or incorrect. Neal, 239 F.3d at 687. In determining whether a state court decision in a habeas case is reasonable, the focus is on the ultimate legal conclusion reached by the state court and not on whether the state court considered and discussed every angle of the evidence. "[T]he only question for a federal habeas court is whether the state court's determination is 'at least minimally consistent with the facts and circumstances of the case.'" Neal, 239 F.2d at 696 (citing Hennon v. Cooper, 109 F.3d 330, 334-335 (7th Cir. 1997)).

The Texas Court of Criminal Appeals denied both of petitioner's applications without written order. In Texas writ jurisprudence, a denial of relief rather than "dismissal" of a claim by the Court of Criminal Appeals generally disposes of the merits of a claim. Singleton v. Johnson, 178 F.3d 381, 384 (5th Cir. 1999). Accordingly, petitioner must show that the denial of habeas relief in state court was contrary to, or involved an unreasonable application of, clearly established Federal law, or was based on an unreasonable determination of the facts in light of the evidence. 28 U.S.C. § 2254(d).

**(2) Voluntariness of Nolo Contendere Plea**

Although petitioner has alleged a number of grounds for relief, his claims regarding the voluntariness of his plea will be analyzed first, because if he entered into the plea agreement knowingly and willingly, he waived most of his other claims.

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in [McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)].

Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973).  The law relating to guilty pleas applies to pleas of nolo contendere.  Matthew v. Johnson, 201 F.3d 353, 360, n. 9 (5th Cir. 2000)(citing Carter v. Collins, 918 F.2d 1198, 1200 n. 1 (5th Cir. 1990)).

The test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the courses of action open to the defendant.  Matthew, 201 F.3d at 364 (citing Hill v. Lockhart, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)).  When a court assesses the validity of a guilty plea it looks to all of the relevant circumstances surrounding it.  Matthew, 201 F.3d at 364-365 (citing Brady v.United States, 397 U.S. 742, 749, 90 S.Ct. 1463, 1469 (1970)).

A defendant pleading guilty must be competent and must have notice of the nature of the charges against him.  The plea must be entered voluntarily and not be the product of actual or threatened physical harm or mental coercion overbearing the will of the defendant.  Nor can the plea be the result of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel.  Matthews, 201 F.3d at 365 (citing

11

Henderson v. Morgan, 426 U.S. 637, 645 n. 13, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976); Smith v. O'Grady, 312 U.S. 329, 334, 61 S.Ct. 572, 85 L.Ed.2d 859 (1941); Brady, 397 U.S. at 750, 90 S.Ct. 1463 and Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 91962).  In addition, the defendant must understand the consequences of his plea, including the nature of the constitutional protection he is waiving.  Matthew, 210 F.3d at 365 (citing Henderson, 426 U.S. at 645, n. 13, 96 S.Ct. 2253; Brady, 397 U.S. at 755, 90 S.Ct. 1263 and Machibroda, 368 U.S. at 493, 82 S.Ct. 510).  Finally, the defendant must have available the advice of competent counsel which acts as a safeguard to ensure that pleas are voluntarily and intelligently made.  Matthew, 210 F.3d at 365 (citing Tollett, 411 U.S. 258 at 268, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973);  Brady, 397 U.S. at 756 and McMann v. Richardson, 397 U.S. 759, 771 7 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)).

Petitioner argues that he did not enter into the plea agreement voluntarily, but rather as the result of coercion, fear and misunderstanding.  More specifically petitioner argues that he was in the midst of a mental and emotional breakdown and not competent to enter a plea of guilty, he was denied a psychological evaluation, he was promised a limited right to appeal, his attorney promised to file an appeal on his behalf, he was threatened with a long prison sentence, his attorney and the prosecutor misrepresented his eligibility for parole and his attorney promised to represent defendant's wife in a child custody hearing.

**(a) Petitioner's Mental Status**

Petitioner claims that he was in the midst of a mental and emotional breakdown and not competent to enter a guilty plea.  The legal standard governing a defendant's competency to enter a guilty plea is identical to that which governs a defendant's competency to stand trial.

Godinez v. Moran, 509 U.S. 389, 399, 113 S.Ct. 2680, 2686, 125 L.Ed.2d 321 (1993); DeVille v. Whitley, 21 F.3d 654, 656 (5th Cir. 1994).  A defendant is competent to enter a guilty plea when he has "sufficient present mental ability to consult with his lawyer with a reasonable degree of rational understanding" and has a "rational as well as factual understanding of the proceedings against him."  Godinez, 509 U.S. at 396, 113 S.Ct. at 2685 (citing Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)) and DeVille, 21 F.3d at 656.

During the plea proceedings petitioner testified that his attorney had discussed paperwork with him which explained his rights, the punishment ranges for the offenses and that he was waiving certain rights.  Petitioner said that he understood both the paperwork and his attorney's explanation of it (5 S.F. 11).  In answer to a question by the trial court, petitioner's attorney stated that throughout the course of the case petitioner had assisted in his defense, either through conversations, in person or by letter and that he understood the nature of the charges and the proceedings (5 S.F. 14).

The record in this case supports the state court's determination that petitioner was mentally competent to enter his plea of *nolo contendere* and petitioner has presented no evidence to the contrary.  Accordingly, there is no basis for finding that the state court was unreasonable when it determinated that petitioner was competent to enter a guilty plea.

**(b) Defense Counsel Promises**

Petitioner claims that defense counsel promised to pursue an appeal on his behalf and also to help his family in litigation with Child Protective Services if he would agree to the plea bargain.  In addition, petitioner claims that both his defense counsel and the prosecution promised that he would be eligible for parole in ten years although that is not accurate.  "An

13

unkept plea bargain is a basis for the grant of habeas relief if the petitioner can prove the existence of the allegedly broken plea." Bonvillain v. Blackburn, 780 F.2d 1248, 1251 (5th Cir. 1986).  To prove that a plea agreement has been broken, a petitioner must show (1) exactly what the terms of the alleged promises were; (2) exactly when, where and by whom such a promise was made; and (3) the precise identity of an eyewitness to the promise.  Id., 780 F.2d at 1251 (citing Hayes v. Maggio, 699 F.2d 198, 203 (5th Cir. 1983) and Blackledge v. Allison, 431 U.S. 63, 97 S.Ct. 1621, 1630, 52 L.Ed.2d 136 (1977)).  Petitioner has not described when or where the promises were made and has not identified an eyewitness to any of the alleged promises.

In addition, his trial attorney, Mark Stolley, submitted an affidavit as part of petitioner's state habeas action in which he stated that he did not coerce, force or pressure petitioner in any way to enter a plea agreement or to plea *nolo contendere* to the charges against him.  In particular, Stolley stated that he told petitioner that for all practical purposes he was giving up his right to appeal and that petitioner understood what he was doing.  It was reasonable for the Court of Criminal Appeals to rely on this evidence to find petitioner's claims to be without merit.  See Carter v. Collins, 918 F.2d 1198, 1202 (5th Cir. 1990)(State court may evaluate ineffective assistance of counsel claim by making credibility determinations based on affidavits submitted by petitioner and attorney).

Moreover, during the plea colloquy, petitioner testified that he had read the paperwork explaining his rights in his cases and that he had signed acknowledgments that he was waiving certain rights (5 S.F. 10-11)  Part of the paperwork he signed included a statement saying he understood the written admonishments, including the admonishment that he was not allowed to appeal the judgment of the court unless the court gave him permission to appeal, except on those

14

matters raised by pretrial motion and ruled upon by the court.  In addition, he signed an admonishment that he was entering his plea voluntarily and without force, threats, persuasion, fear or promise.  Ex Parte Crissup, App. No. 61,474-02 at 67.  The representations of a defendant, his lawyer and the prosecutor at a plea hearing, as well as the findings made by the judge accepting the plea, constitute a formidable barrier in a subsequent collateral proceeding. Blackledge, 431 U.S. at 74, 97 S.Ct. at 1629.  "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."  Id.

Petitioner has presented nothing more than a conclusory allegation that his attorney coerced him into entering the plea agreement.  Accordingly, it cannot be said that it was unreasonable of the Texas Court of Criminal Appeals to find that petitioner's claims were without merit.

**(c) Threats of Long Prison Sentence**

Petitioner argues that he was coerced into the plea agreement by Stolley who told him that if continued with the trial it would result in a 200-year prison sentence and he would die in jail.  He claims that his attorney also told him that he could not defend him "with a straight face."  Petitioner cannot prevail on these claims for several reasons.

First, his attorney submitted an affidavit stating that he did not threaten or promise petitioner anything in exchange for his entering into the plea agreement.  Ex Parte Crissup, App. No. 61,474-02 at 44-46.  Second, petitioner initialed two forms indicating that he was entering into the plea agreement "voluntarily and without force, threats, persuasion, fear or promise." Ex Parte Crissup, App. No. 61,474-01 at 74; Ex Parte Crissup, App. No. 61,474-02 at 67.

Finally, the advice petitioner's attorney gave him regarding his maximum sentence was not inaccurate.  Petitioner faced a maximum sentence of 99 years or life on the solicitation to commit capital murder charge, Ex Parte Crissup, App. No. 61,474-02 at 64, and a maximum of 20 years on each of the five sexual assault and indecency charges.  Ex Parte Crissup, App. No. 61,474-01 at 71, 79).  His attorney's assertion, after four days of trial, that the trial was going to result in a 200-year sentence and that he could not defend petitioner with a straight face indicates that his attorney thought the evidence against petitioner was overwhelming and would result in a conviction and long sentence.  Petitioner has presented nothing to show that his attorney's prediction was inaccurate and the record does not reveal that the prediction was unsound.  Accordingly, any recommendation by petitioner's attorney to accept a 40-year sentence when faced with a possible conviction and maximum 200-year sentence is better characterized as advice, rather than coercion.

### (d) Misrepresentation of Right to Appeal

Petitioner argues that did not understand that he was giving up his right to appeal.  However, the waiver of the right to appeal appeared on both plea agreements signed by petitioner, on both admonishments given to him by the court and on both statements that he signed indicating that he understood the admonishments.  Ex Parte Crissup, App. No. 61,474-02 at 42-43, 61-63, 67-68; App. No. 61,474-01 at 66-70, 74-75.  In addition to the documents petitioner signed, in the affidavit Stolley submitted to the state court he said that he explained to petitioner that by entering into the plea agreement, he was, for all practical purposes, giving up his right to appeal.  The attorney stated that petitioner understood that he was waiving his appellate rights and voluntarily agreed to do so.  Ex Parte Crissup, App. No. 61,474-02 at 45.

16

Also, during the plea colloquy, the trial court told petitioner that he would not have any right to appeal if the court followed the plea bargain agreement.  Petitioner affirmed that his attorney had explained the paperwork to him and he understood it (5 S.F. 11).

The only evidence in the file to support petitioner's allegation that he did not voluntarily waive his right to appeal are two documents where he did not initial that he was giving up his right to appeal.  On the "Defendant's Statement Understanding Admonishments," petitioner did not initial the blank in front of the statement "I have decided that if the Court fully accepts the plea bargain agreement in my case, I will waive or give up any right of appeal that I may have." Ex Parte Crissup, App. No. 61,474-02 at 68.  However, petitioner did initial the paragraph immediately above, where he indicated that he knew by signing the agreement his appeal rights were limited to those matters raised by written motion ruled upon by the court, unless the court granted him permission to appeal, which, in all likelihood, it would not do.  Id.  The only right petitioner preserved by not signing the second paragraph was his right to ask the court for permission to appeal, which he did, and which request was denied by the court.

Petitioner also did not initial a paragraph on the form entitled "Defendant's Waiver of Rights" which said, "I understand that, whether I plead guilty or nolo contendere with or without a plea bargain agreement, I may have a limited right to appeal.  I hereby waive any right of appeal that I may have to the judgment of the Court." Id. at 69.  However, in the immediately preceding paragraph petitioner initialed a blank indicating that he withdrew all pretrial motions filed on his behalf except those previously ruled upon by the Court and that he waived appeal of any pretrial motions filed in writing and ruled upon by the court.  Id.  Although he did not initial

the overall waiver of his right to appeal, by initialing the other waivers of his rights, he eliminated all other possible grounds for appeal.

Looking at the record as a whole, nothing in it indicates that the decision of the Texas Court of Criminal Appeals denying petitioner's claims that he did not voluntarily enter the plea agreement was unreasonable or inconsistent with the facts or circumstances of the case. Accordingly, summary judgment should be entered for respondent on petitioner's claim that he entered into the plea agreement involuntarily or as the result of coercion.

**(3)  Ineffective Assistance of Counsel**

Petitioner also contends that he received ineffective assistance from his attorney.  To prevail on an ineffective assistance of counsel claim, a petitioner must meet the two-prong test set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  He must show that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable.  Id., 466 U.S. at 687-88, 104 S.Ct. at 2064.  Petitioner must show "significant prejudice" in a noncapital context.  Armstead v. Scott, 37 F.3d 202 (5th Cir. 1994)(citing Spriggs v. Collins, 993 F.2d 85, 88, n. 4 (5th Cir. 1993)).

Judicial scrutiny of counsel's performance must be highly deferential and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  Strickland, 466 U.S. at 689, 104 S.Ct. at 2065.  A court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.  A petitioner must identify the acts or omissions of counsel that

18

are alleged not to have been the result of reasonable professional judgment.  The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.  Id., 466 U.S. at 690, 104 S.Ct. at 2066.

When challenging a guilty plea, the petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.  Hill v. Lockhart, 474 U.S. 52, 58, 106 S.Ct. 366, 370 (1985).  Then, typically, in order to show that the error prejudiced the defendant, the court must make a prediction about what the outcome of the trial would have been had counsel done the things that the petitioner now urges.  Id.  In the non-capital sentencing context, the petitioner must demonstrate that the sentence he received would have been "significantly less harsh" but for the deficient performance of his attorney.  Spriggs, 993 F.2d at 88.  The court must consider the following: (1) the sentence imposed in the case; (2) the minimum and maximum sentence allowed by law (3) the placement of the sentence within the allowable range and (4) any mitigating or aggravating factors considered by the trier of fact.  Id, 993 F.2d at 88-89.[3]

**(a) Advice Regarding Ability to Appeal**

Petitioner argues that his attorney's advice regarding his ability to appeal was erroneous and that he entered into the plea bargain believing that he had the right to appeal his case.  As

---

[3]In United States v. Grammas, 376 F.3d 433 (5th Cir. 2004), the Fifth Circuit abrogated the "significantly less harsh" test for ineffective assistance of counsel claims arising under the federal sentencing guidelines.  Id. at 438.  However, the court noted an important distinction between the federal guidelines and state sentencing regimes because the state sentencing tends to be more discretionary than the more predictable federal system.  The court commented that "practically any error committed by counsel could [result] in a harsher sentence."  Id. at 438 n. 4 (quoting Spriggs, 993 F.2d at 88).  Therefore, the court limited its adoption of the "any amount of jail time" test to cases involving the federal sentencing guidelines.  Id.

discussed above, the record indicates that petitioner knew that he was waiving his right to appeal

all matters except for those pretrial matters filed in writing and ruled on by the court, and that

there were no such matters in his case.  There is no support in the record for petitioner's

contention that his attorney committed error by advising him that he had a right to appeal when

he actually did not.  Conclusory allegations, unsupported by specifics, are subject to summary

dismissal, as are contentions that in the face of the record are incredible.  Blackledge, 431 U.S. at

74, 97 S.Ct. at 1629.

**(b) Heated Discussion During Trial**

Petitioner alleges that during the trial his attorney misrepresented documents to a witness

for the prosecution, which sparked an angry, name-calling argument between the prosecutor and

the defense attorney in front of the jury.  His attorney asked for a mistrial but it was denied.

The trial transcript shows that the argument took place outside the presence of the jury.

Although the door to the jury room was open when the prosecutor cursed petitioner's attorney,

the trial court questioned two jurors who were the last to leave the courtroom prior to the

incident.  Both testified that they did not hear anything that happened in the courtroom after they

had been released to go into the jury room (4 S.F. 115-124).

Despite the fact that the argument occurred outside the presence of the jury, petitioner

asserts that he felt compelled to agree to the plea bargain because he thought his attorney had

lost all credibility with the jury.  Giving petitioner every benefit of the doubt and assuming that

petitioner would not have pleaded *nolo contendere* if his attorney had not gotten into the

argument with opposing counsel, petitioner still must clear the hurdle of showing that the

outcome of his case would have been significantly less harsh had his counsel not committed the

error.  However, he has presented neither evidence nor argument in support of such a contention. It is not the role of the court to assume prejudice.  Rather, <u>Strickland</u> requires that a petitioner affirmatively prove prejudice.  <u>Czere v. Butler</u>, 833 F.2d 59, 64 (5th Cir. 1987).  Without more, petitioner cannot meet his burden of showing that the decision by the state court that his counsel provided effective assistance was contrary to clearly established federal law.

**(c) Sentence Length and Eligibility for Parole**

Petitioner also argues that his attorney misrepresented the length of sentence he would receive and told him that he would be eligible for parole in ten years but he is not.  It is presumed that he is arguing that he would not have pleaded guilty had he known that he would not become eligible for parole consideration in 10 years.

Any assertion by petitioner that he did not understand that he was being required to serve "stacked" 20-year sentences while also serving a concurrent 40-year sentence is disingenuous. The trial court described the plea bargain agreement to petitioner:

> THE COURT:  . . . and the agreement in [Cause No. 03-CR-2175] is that in exchange for your plea of no contest to all five counts, that the Court assess punishment on each count to 20 years, and that the Court stack one of those counts to another count, so that in this cause number you would be required to serve a sentence of what would amount to 40 years in the Texas Department of Criminal Justice.

> PETITIONER: Yes.

> THE COURT: And this case is to run concurrent with that in Cause 04-CR-2930.

> PETITIONER: I understand, Your Honor.

(5 SF 18-19).  The consecutive 20-year sentences were also described by the prosecutor (5 S.F. 16) and again by the trial court when it pronounced petitioner's sentence (5 S.F. 21).

If petitioner is arguing that although he understood that he would be serving consecutive 20-year sentences his attorney promised that he would be eligible for parole in 10 years, he must show some independent indicia, such as the affidavit of a third party, of the likely merit of his contentions.  Harmason v. Smith, 888 F.2d 1527, 1529 (5th Cir. 1989)(citing Davis v. Butler, 825 F.2d 892, 894 (5th Cir. 1987) and United States v. Raetzsh, 781 F.2d 1149, 1151 (5th Cir. 1986)). Petitioner has not done so.

Even assuming that his attorney misadvised him, and assuming that he would not have pleaded guilty had he known that he would serve more than 10 years before becoming eligible for parole, petitioner still must show prejudice.  Specifically, he must make a showing that the sentence he received would have been "significantly less harsh" but for the deficient performance of his attorney.  Spriggs, 993 F.2d at 88.  He has made no effort to do so. Moreover, given the nature of the charges against petitioner and the maximum sentence he was facing, it is unclear how he *could* show that the outcome would have been different if the case had gone to the jury.  In the absence of any evidence or argument on this prong of the Strickland test, summary judgment should be entered for respondent on petitioner's ineffective assistance of counsel claim.

**(4)  Remaining Grounds for Relief**

Because the evidence in the record shows that petitioner entered into the plea agreement voluntarily and with knowledge and understanding of the consequences, he waived all his other claims[4].  "It has long been held that a valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights."  Matthew, 201 F.3d

---

[4]See pages 11-12, supra.

at 364.  The only claims not barred are those that challenge the power of the State to bring the defendant into court to answer the charges against him and those that challenge the validity of the plea.  <u>Id.</u>  Because petitioner is not challenging the power of the State to bring him into court and his challenges to the validity of his plea have been addressed, it is recommended that his remaining claims be dismissed and summary judgment entered for respondent on all of petitioner's claims.

## C.  Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although petitioner has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed.  <u>See</u> <u>Alexander v. Johnson</u>, 211 F.3d 895, 898 (5th Cir. 2000)(a district court may <i>sua sponte</i> rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  <u>Slack v. Daniel</u>, 529 U.S. 473, 484, 120 S.Ct. 1604, 146 L.Ed.2d 542

(2000).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327, 123 S.Ct. at 1034.

A slightly different standard applies when the claims are dismissed on procedural grounds.  In that instance, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack, 120 S.Ct. at 1604, 529 U.S. at 484 (emphasis added).

In petitioner's case, it is recommended that his claims be dismissed on the merits.  If the district court orders that petitioner's cause of action be dismissed, and petitioner seeks a COA in order to proceed with his case, it is further recommended that the COA be denied because he has not made the necessary showing for issuance of a COA.

## **RECOMMENDATION**

It is respectfully recommended that respondent's supplemental motion for summary judgment (D.E. 59) be GRANTED.  Petitioner's application for habeas corpus relief should be DISMISSED with prejudice.  It is further recommended that any request for a Certificate of Appealability be DENIED.

Respectfully submitted this 23rd day of January, 2007.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1)(C) and Article IV, General Order No. 80-5, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  <u>Douglass v. United Services Auto Ass'n</u>, 79 F.3d 1415 ( 5th Cir. 1996) (en banc).